146501 Donovan Juarez Savage et al. v. City of Memphis James Archie Arguments not to exceed 15 minutes for plaintiffs, 15 minutes to be shared by defendants. Mr. Walker for the appellants. Good morning. May it please the court, I'm Randy Walker of the Memphis Bar. I'm here today with Mr. Louis Chiozza and Mr. Christopher Lewis also of the Memphis Bar on behalf of the plaintiffs. Before I begin I would like to reserve 4 minutes for rebuttal please. This is a case about two things. The first is an officer who failed to change a false carjacking report or NCIC report of a carjacking which led to a chase and a shooting. And the second resulting from that is a police officer shot an unarmed man in the back, killing him. We're here today because the district court granted improperly, granted summary judgment to all defendants as to all issues. And in brief, the reasons that should be reversed are that Officer Archie or former Officer Archie, the one who shot the man, is not entitled to qualified immunity. And the City of Memphis is liable not only for that intentional act under state law but also for the negligent act of Officer Torres Nolan in failing to correct that NCIC report. And ultimately the city is also liable based upon inadequate training and deliberate indifference. So I'd like to begin with Officer Archie. There is proof to satisfy the three-step analysis employed with respect to whether or not a police officer is entitled to qualified immunity. Now the first, excuse me, the first is the issue of whether a constitutional violation occurred and I think it's patently obvious that shooting someone to death to seize him is a violation of the Constitution. Not always. In this instance and in light of Tennessee v. Garner, I submit it was, Your Honor. That's the question we're here to determine, right? It is, Judge Martin. But you can't assume that you got that one. Well, I will assert that it occurred in this case in light of Tennessee v. Garner. In fact, that case addresses the second point, which is whether there was a violation of a clearly established constitutional right. And if the Fourth Amendment was violated here, then in light of Tennessee v. Garner and going further, whether Officer Archie specifically would have had notice of this clearly established constitutional right. I submit that since the Supreme Court decision in that case was issued in 1985, and since I believe the City of Memphis actually referred to that in their policy and procedure, and even more since it was Garner arose out of a Memphis police officer shooting somebody in the back to prevent them from escaping, I think that there is sufficient proof to establish that there was a violation of a clearly established constitutional right. So the last point is whether or not the shooting was objectively reasonable, and it was not. Officer Archie's ultimate excuse for shooting and killing Mr. Dowdy was, and I'm quoting, his body just stopped ready to turn. I'm not sure what that means, but I don't think this court even has to try to parse that, because there's a video in this case. He was fired as a result of this. I'm sorry, Your Honor? Was he not fired as a result of this incident? He was, ultimately. I said he was ultimately. I don't know. He had a hearing? He had a hearing. That kind of thing? This is the case in which the video is not a part of the record. Is that right? We have so many cases in the course of a week that might or might not be correct with respect to this case. Let me clarify that. This is a situation where Mr. Lewis took the video to file it with the district court as part of the record in this cause, and the district court clerk chose to say, no, we won't take that. Now, it was ultimately because of that action, it was furnished to the judge, and if you look at the judge's order granting summary judgment in this case, it's clear that she looked at the video because she refers to it and talks about it. She's saying it doesn't make any difference ultimately, but I submit that if you look at the video, it clearly does. We also submitted it to this court under Rule, I think, 10B of your rules, so that the court would have it available to look at. On what basis did the clerk reject the video? We don't know. The clerk just said, I will not let you file this. Well, it was untimely, wasn't it? But I don't know that it's for the clerk to determine that. Well, you're down to something that I didn't want to really get into, but the bottom line here is I think that a clerk of any court should accept anything for filing. Well, our clerks don't always. It depends on... Let me speak. I'm sorry. I'm speaking primarily in terms of trial courts. Because that's where the record is going to be made. And so if someone brings something for filing with a clerk, in this case the district court clerk, that clerk should have accepted that for filing, put it in the record, and then it could have been argued about whether it had merit or not thereafter. I don't think that the plaintiff should be penalized in this case because the district court clerk made a decision that should have been up to the judge. Let me go further and just quickly point out that what that video shows, I won't spend a lot of time with this, is that at the time that Officer Archie, former Officer Archie, stopped, he stopped, he drew his weapon, he took careful aim, and he shot. All of that except for the actual shot has Mr. Dowdy in the frame of the video. So you're seeing what's going on. And what you'll see is that he didn't stop ready to turn. He didn't change his gait. He continued to do what he was doing, which was holding up his pants with one hand and running. It was the same all the way across the scene. And so by the time he actually leaves the frame, there's nothing important because the officer had already drawn his gun, prepared to fire, and just as he leaves the frame, he fires. So the officer's assertion that he stopped ready to turn is not true, and the video refutes it completely. You can stop there and say, something's wrong here. But beyond that, there's adequate proof without the video, adequate, no question. Officer Archie has admitted that he never saw a weapon. And, of course, after the fact, it was found that the man didn't have a weapon. To be fair for the argument's purposes, you're going to acknowledge the features that were taken into account by the district court that the circumstances that the officer claims led him to believe that there was a likelihood that Mr. Archie had a gun. Yes and no. But, I mean, the argument's not helpful if you're not giving that fact. Well, you're not taking into account the full facts. Exactly. Well, let me say this. I mean, I don't think you gave us the full facts about the video either, but I don't have anything except the district court's order before me. I'm sorry. If I've said something incorrect, I apologize, but I will note to the court that I'm here responding to a motion for summary judgment. And so, frankly, I think I'm entitled to pick out the facts that favor the plaintiff and let somebody else try to deal with it. They don't get the inferences. We do. Well, it's undisputed that Mr. Archie was running with his hand held in an odd manner for somebody who was trying to escape. Mr. Dowdy, yes, Your Honor. I'm sorry. I do that all the time. But, yes, no, I don't dispute things like that. And I don't dispute that that was the car that had been reported in the carjacking. And he'd already by that time crashed the car. Right. I think the significance of the point I would bring up here is the timeline because what should be considered with what is objectively reasonable is what was going on at the time that this officer decided he would pull his weapon and kill somebody. They'd been running for 54 seconds. The crash was over. The car was not a factor. All you had was the man running in front of him and the question of whether there was a weapon because nobody ever saw one. None of the officers had one. But you have more than the question, don't you? I mean, the argument's helpful when you take into account those things and the inferences that the district court took into account, right? And one of them was the testimony that Mr. Dowdy was reaching for the consul. So should we talk about that? Well, what I would say to that is that's Officer Archie's statement, but as I noted, I think in the principal brief, he came up with that on the third time he was questioned about this. He never said that the first two times. When he was finally deposed, we're talking a year or more after the incident, then he was reaching for the consul. Of course, he doesn't say he saw a weapon. He says he looked like he was reaching into the center consul. That's right. That's all I know. And the three statements are part of it. I don't know that, that he gave three statements. One was to Detective Amber Webb who conducted. There was another, and I can't remember whether there was a follow-up with her or not, but there were two prior. They were not depositions, but there were statements. They're in the record. I mean, it takes. I don't quite understand all the discussion about the facts. I mean, we're taking the facts as in the light most favorable to you. It seems to me we have to look at the parameters set forth by Tennessee versus Garner and whether or not the officers had probable cause to state that he had committed a crime, the officer or the defendant committed a crime involving infliction or threatened infliction of serious harm. Based on everything he saw, Archie said he believed that Doughty posed a threat to others. That would seem to establish a question under Tennessee Garner whether or not there was immunity to the rare case they use deadly force and qualify for immunity. It seems to me the facts are the facts, but what do you have to undermine Archie's belief that Doughty posed a threat to other people? Your Honor, I submit that all Officer Archie had that would apply to that in any relevant way was the fact that they were chasing a car that had been reported as carjacked. I acknowledge that particularly under, I think, Memphis Police Department policy, what you're looking at is that they have it that there's an inference, at least for the officers, that either violence was used or a weapon or something like that. Something happened that potentially said there was violence involved in the action. But that's all they had. That's all he had. And, again, I want to stress this 54-second run, the chase on foot, because— Well, a carjacking typically does not occur unless there is a threat of violence or a gun or something to force the owner of the car to give it up. So I don't think it would be part of police policy necessarily. But why would it not be a reasonable inference to believe that an individual who was thought to have committed a carjacking would not be armed? Well, partly there's no way to know that. And, of course, that goes to the last issue I would have gotten to, which is the fact that we've asserted, and the trial court and the defendants did not address, the fact that we say that the city was negligent in failing to provide a description of the ones who are the asserted carjackers. The lady who gave this false report gave a description. Four people, two female blacks, two black males with dreadlocks. Well, Mr. Dowdy was not female, and he had closely cropped hair. So that's a separate point of negligence on the part of the city we assert, not addressed, which is, had they provided this description— —independently liable here based on any negligence that occurred? What would be your legal basis for liability then? It's the general removal of liability. I can't do it another way under the Tennessee Governmental Tort Liability Act. The overall, the broad, original setting aside of immunity under Section 2920-205. That's really where I think your time is up. I'm sorry, Your Honor. I doubt that was really where you wanted to go with your argument anyway, but nevertheless, we will hear from Ms. Davis. Good morning, Your Honor. I'm Barbaralette Davis. I represent the city of Memphis in this case. Regrets and a tragic outcome do not always equal liability in a court of law. This case happens to be one of those instances, opine Judge Lipman in her order. The outcome in this case is tragic, but the facts do not support an action pursuant to 42 U.S.C. 1983 or Tennessee state law. The plaintiffs have alleged failure to train Officer Archie, failure to supervise Officer Archie, inadequate supervision of MPD police officers, policy and or procedure that does not require appropriate and reasonable deadlines for changing status of cases, policy and or procedure allowing for broadcasts of alerts without attendant circumstances, and that they all were deliberately indifferent to the constitutional rights of Mr. Dowdy. Excuse me. You and Mr. Taylor are going to divide your time. We are? I know how. Oh, seven and a half minutes. A piece? Each, yes. They've also alleged state law violations that bind through policies for hiring and training and supervising their employees. The city directly caused the death of Mr. Dowdy. And further alleges negligence on the part of Mr. Archie in firing and shooting Mr. Dowdy approximately caused Mr. Dowdy's death by failing to properly supervise and train Officers Nolan and Officer Archie, negligence of Officer Nolan in his failure to change. So at least you're taking a lot of your short time to read the charges, which we know, I mean the claims. The city would assert that the allegations of the city's failure to train and supervise its police officers is not supported by the record. Municipal liability based on failure to train requires a training program. You can't be liable anyway unless the officer's liable. That's correct, Your Honor. But what they're alleging is that the city did not train its officers, did not train Nolan, did not train Officer Archie. The record is replete with the training that the city provided to both of these officers. And the district judge took that into account. Officer Archie, in addition to his basic training, which included over 120 hours of firearms training, also included in-service training after the basic training for more than seven or eight years. With respect to Officer Nolan, his basic training included training on communications, TAS, as well as NCIC training. He's not a defendant here. He's not a defendant. So are you going to be held liable for his conduct when there's not going to be any determination in this case as to his liability? Your Honor, what they're alleging is that the negligence of Officer Nolan led directly to the death of Mr. Dowdy and are basing it on the Tennessee Governmental Tort Liability Act. So they intend to prove the negligence of Mr. Nolan without Mr. Nolan as a party? Is that your understanding? That's what they're doing, Your Honor. They're trying to assert that the negligence of Mr. Nolan should be a basis of liability under the Governmental Tort Liability Act. But the city takes the position that the 29-2205 accepts immunity on that basis. Under the civil rights exception, Mr. Nolan's negligence, whether he's negligent or not. Do you perceive the negligence of Mr. Nolan? No, the city does not. But the city would argue that if the court finds that he's negligent, then that negligence is accepted based on 29-2205. The record established and the court found, Your Honor, that the training program in which both officers, Archie and Nolan, participated was adequate. The court could find no basis on which to determine that the city's training program with respect to either one of these officers or MPD officers in general is defective. Courts have found that officers who are well-trained are not free from error and perhaps might, and this is to your point, Judge Givens, might react very much like the untrained officer in certain circumstances. But that, too, does not make the city liable. They, in their complaint, also allege a failure to supervise on the part of the city. There is nothing in this record, Your Honors, to support such an allegation. And the district court so found. They, too, assert a failure to discipline with respect to the city. And the district court correctly found there not to be any basis. In fact, as Judge Cook asked, this officer, Officer Archie, was investigated. Officer Nolan was investigated. Officer Archie was terminated. Officer Nolan was issued a 45-day suspension, which is tantamount to four and a half checks. So both of these police officers were disciplined based on the integrity policy of the city of Memphis. Isn't that troubling? Isn't that an indication that the city hadn't properly trained and supervised them? I mean, if their behavior was proper and in compliance with training, why would you discipline them for this particular episode? No, Judge Murphy. The city would disagree that because it disciplines its officers and find that they violate policy, that that, in fact, is a basis to establish that the training that has been provided to them is not adequate. You train them on policies. You train them the way to handle these very, very serious situations. They violate it, and they're fired and disciplined? That's correct, Your Honor. The city has a policy of training its officers and ensuring that there is no harm done to the citizens of the city of Memphis. And the only way that it can do that is to impose discipline when it finds that there have been violations of its policies. We would ask the court to uphold the decision of the district court and uphold, find that the Sompere judgment in this case should be affirmed. Thank you. Good morning. May it please the court, my name is Timothy Taylor. I represent Officer Archie in his individual capacity. I'd like to begin by addressing some of the points that the plaintiff raised. The constitutional violation, the plaintiff argued a clear violation of the Constitution shooting an unarmed man in the back. As Judge Gimmons noted, not always. You have to look at the totality of the circumstances as the case is held. He made a mistake here, right? Your client made a mistake. He comes on the scene of a, and it may very well be a reasonable, it may be an understandable mistake. He comes on the scene of a carjacking. As Judge Gimmons points out, it's reasonable to think the weapon may be involved in that sort of crime. He gets up and starts running. There's a 54 second chase. At the end of the chase, the officer sees the suspect with his hand on his waistband. He thinks he's got a gun. The man stops, turns. The officer shoots him, thinking he's got a gun. He doesn't have a gun. He's holding his pants up. It's a mistake, right? I think that addresses the very point about the totality of the circumstances and looking at something in hindsight. At the time he made the decision, I would say it was reasonable. Under the constitutional standard, it was reasonable for him to do that. Why? The totality of the circumstances, as Judge Gimmons pointed out, I would call the court's attention to this court's decision in Pollard, which came out just in March of this year. A very similar case, facts not exactly the same, but involved a car chase, an unarmed suspect who was shot, fired at 80 times, hit 23 times. The court found that was not a constitutional violation. In this case, first of all, a few points. It is not only reasonable to assume Tennessee Code annotated the criminal law presumes the presence of a deadly weapon or intimidation in carjacking by definition. The plaintiffs in their brief specifically said that the City of Memphis trains its officers to understand that carjacking involves an armed and dangerous person. That's the plaintiff's characterization. Then, the 54-second chase. The 54-second chase started when the police officers activated their lights behind the car. Part of that 54-second chase was the car chase down several blocks, through a stop sign, including a collision with another vehicle, Mr. Dowdy, staying in the car for a moment, looking for something, getting out, and then fleeing on foot. So the whole incident from the time the officers turned on their lights on their car, when they were still in the car until the time Officer Archie fired his service weapon, was 54 seconds. It took me approximately 54 seconds to say that. That's how fast this happened. Did your client sue the City of Memphis for its employment action in firing him? An arbitrator is considering his termination grievance as we speak, and we expect a decision within 30 days. Okay. Now, as to the video, it's not in the record. It was filed with the court, or attempted to be filed with the court. I don't know whether it was placed in the docket or not.  It's always been my understanding, in order for something to be in the record before the court on summary judgment, it has to be admitted into evidence. There was no sworn testimony admitting this video into evidence. There was no sworn testimony identifying it. Is it true the district judge looked at the video? I cannot tell that for the district court to order, Your Honor. The district court said that it shows a side perspective of the chase, which it does. It doesn't appear she looked at it. I mean, because she says it wouldn't have made a difference, and how does she know it wouldn't have made a difference if she hadn't watched it? All I can say is, Your Honor, that we specifically, obviously we have seen the video, and we argued in our brief that it showed a side view of the incident, and I don't think there's any dispute of fact as to that, so I cannot tell whether she reviewed it or not. I would also say that— Well, she probably wouldn't just say so because you said so. True enough. But either way, we submit it doesn't contradict Officer Archie's testimony and that Mr. Walker's characterization of the video is incorrect. First of all, Mr. Walker implies that Officer Archie stopped and drew his firearm and fired at Mr. Doughty. Officer Archie had his firearm out from the time he got out of the car. All the officers did when the car came to a stop after the wreck. In the video, you can actually see Officer Archie. To the extent the quality is there, it's a very grainy video. You can actually see that Officer Archie, while he is running at full speed, has his arms out and puts his firearm up because he sees the suspect doing something he thinks may constitute a danger. And then the suspect returns back to running, and he lowers his arm, and he goes back to chasing him. And then he comes up again, and he comes up to this open area. This is a T intersection in a residential neighborhood. While they're running down the sidewalk, there's cover for Archie to take, cars, trees, etc. Mr. Doughty then veers across this wide residential street to an area where if Mr. Archie pursues him, he is going into an area where there's no cover. So he does what he is trained to do, and he does it without thinking. He slows down before he approaches this open area, and he covers the area and covers the suspect with his firearm in case the suspect decides to turn and fire. Your reason for arguing the video that's not part of the record is? It's because Mr. Walker was addressing it. I realize that, but you see how this court can't check what you're saying. I agree, Your Honor, because I agree it's not in the record. Well, is this consistent with Officer Archer's deposition testimony? His testimony, well, I believe so, Your Honor. His testimony testified that he saw him look over his shoulder a couple times as he was running. He was thinking that he was looking over his shoulder to line him up and the other officers up for a shot. No dispute that all the officers gave him verbal commands to stop, get on the ground, stop or I'll shoot. Various officers gave various commands. There's no dispute that he was running the entire time with his hand at his waist, and all the officers believed he had a firearm, not to mention the fact that they went into the situation believing he had a firearm. Mr. Dowdy didn't do anything to give them any other impression. We're told that the officer's testimony morphed. Address that, if you would, very shortly. He gave an initial statement to security squad, which is the Internal Affairs of the Police Department. And that's in the record? I honestly don't know if his initial statement is or not. He gave a second statement to security squad, and I believe that is where it may have been first addressed because the security squad came back and wanted to ask him some more questions. So they did, and he answered them. I think the third statement to which Mr. Walker referred was his… Deposition, I take it. No, I think the third statement may be his hearing summary, his administrative hearing within the police department on his termination. And then there's his deposition. Four times. Four times. A hearing summary. Let me clarify. A hearing summary is not a statement. A hearing summary is not a record. It's the hearing officer's version of what happened. It's not a transcript of what happened. So I can't say it counts. It's hearsay. I didn't think there were that many. No. Good point. The hearing summary is not a statement by Officer Archie. He did not acknowledge it. It's what Chief Rawlings said happened in the hearing, not Georgia. I think your time's up. I am indeed. I have just one question. Certainly. You may know where the video came from, but as far as the court is concerned, we have no idea where the video came from. We have no idea who took it. We have no idea how it was preserved or if it was preserved. And that's the whole point, right? As far as the video is concerned, yes, Your Honor. That is the entire point. The district court does not go into why or why not. It isn't in the record. The district court just says, well, if you considered it, it wouldn't make a difference. It says it's not in the record. It says it's not in the record, and I would submit the docket, other than the plaintiff's filing a document saying, here's a video. There's nothing in the record identifying, authenticating it, period. And once again, we would ask that the court obviously uphold the summary judgment. Thank you. Mr. Walker. Let me start with the last point first. It's my understanding that the video was actually provided to Plaintiff's Counsel through discovery by the city. Well, I mean, you may know where it comes from, but to get something into evidence, somebody else has to know. I understand, Your Honor. I think there's enough there, but for the sake of the limited amount of time, I want to move on to several other points. The court asked the question about Officer Nolan not being a defendant under the Governmental Tort Liability Act. He doesn't have to be. In fact, the one who's going to have to be before the court technically and the one who's going to pay. I didn't mean to imply the law required. I was just asking. But it raises a significant point because if this court were to conclude, and I suggest it shouldn't, that Officer Archie gets a pass, that doesn't give the city a pass because Officer Nolan was the one assigned to investigate the carjacking. Twenty-four hours before the shooting, he knew that the allegations were false. Do you think you might have a problem with the attenuation of causation as to Officer Nolan for the death of Mr. Dowdy? Do you think there might be a problem? Do you think his negligence is the proximate cause of his death? No, Your Honor, not at all. Isn't that what you have to prove to establish negligence? Yes, but that's going to be a question of fact for the jury to determine or for the trier of fact even the court must determine. That's a fact question. It's not a question of law. That being so, it has to go back to the trial court if that's all we're talking about. My point with regard to him, and I want to go as quickly as I can, my point with regard to him is what he did know and what he didn't do. He knew that he was required to change that report before he went home that night, before he left, before the end of his shift. That's the way he said it. He knew that. He knew, he admitted that bad things could happen if he didn't correct that report, but he didn't correct that report, and the only reason he gave for that is he was tired, and he probably was based on everything else you see in this case. It doesn't matter. He had a duty to change that report, and basically he's admitted that bad things would happen. Not basically. He admitted that bad things could happen if he didn't change the report, and they certainly did, and there's your causation. He said, yeah, I know that. Exigent circumstances. That was one of the terms, exigent circumstances, but he didn't change it when he should have. Had that been done, we're now back to that thing because the court asked questions about doesn't the carjacking, in effect, give this officer at least his initial probable cause to do what he was doing well? As Officer Bridgeforth testified, one of the other officers on the scene, and maybe others, but I know he did, we wouldn't have pursued. If that had been changed to stolen instead of carjacked, policy says we don't pursue. So you have an entirely different situation. Now, the city can't escape liability for that. If you're going to do that, it's like you're giving them a pass for everything. Be as negligent as you like, and the people will die as a result of your negligence, but you're not responsible because that's what the ruling would do. Judge Cook asked a question in my initial argument about or made the point about the trial court drew some inferences or couldn't the trial court draw some inferences in favor of the defendants, and my answer is no. This is a motion for summary judgment. If the court did that, and I submit when you read the order, the court did do that. That's error all by itself. Undisputed facts really don't require inferences. I'm sorry, Your Honor, I don't hear well. Undisputed facts really don't require inferences. No, but the facts aren't undisputed. I'm about to run out of time. I submit that one key with regard to this case is that when you look at Officer Archie is that the city has a policy, a written policy which he should have known that says you have to go through escalating steps before you can pull your gun and shoot somebody. He basically testified that no, as far as he was concerned, there was no policy that prevented him from simply shooting the man to death. This is Garner. This is wrong. We ask this court to reverse this and send it back to the trial court. Thank you. We appreciate the argument all of you have given, and we'll consider the case carefully. Thank you.